UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LORI JEAN MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20-CV-516-HBG |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties. [Doc. 18]. Now before the Court are Plaintiff's Motion for Judgment on the Pleadings [Doc. 20] and Defendant's Motion for Summary Judgment [Doc. 22]. Lori Jean Miller ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

### I. PROCEDURAL HISTORY

On July 16, 2018, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on July 2, 2018. [Tr. 73, 167–70]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

ALJ. [Tr. 105–09, 111–15, 117]. A hearing was held on January 8, 2020. [Tr. 30–60]. On January 28, 2020, the ALJ found that Plaintiff was not disabled. [Tr. 12–24]. The Appeals Council denied Plaintiff's request for review on October 27, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on December 8, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. The claimant has not engaged in substantial gainful activity since July 2, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following "severe" impairments: major depressive disorder; anxiety disorder; and attention-deficit/hyperactivity disorder (ADHD) (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She can perform simple routine, repetitive work with occasional changes in work duties. She can have no customer service interaction with the public, but can have frequent interaction with coworkers and supervisors.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

2

> 7. The claimant was born on September 1, 1961 and was 56 years old, which is defined as an individual with advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 2, 2018, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17–24].

### III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

5

"based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V. ANALYSIS

Plaintiff raises one major issue on appeal. Plaintiff disagrees with the ALJ's RFC finding and argues that it is not supported by substantial evidence. [Doc. 21 at 6]. Plaintiff requests for the Court to remand her case for further proceedings and proper adjudication. [*Id.* at 9]. The Commissioner argues that substantial evidence supports the ALJ's analysis and ultimate RFC finding. [Doc. 23 at 8]. The Commissioner request for the Court to affirm the final decision of the Commissioner. The Court now turns to the parties' respective arguments.

Plaintiff contends that the RFC finding is "inconsistent with the record as a whole." [Doc. 21 at 7]. Specifically, Plaintiff argues that the RFC finding is flawed because the ALJ failed to include any limitations relating to Plaintiff's severe limitations in her ability to maintain attention and concentration. [*Id.*]. Plaintiff notes that throughout her treatment with Peninsula outpatient, she has routinely been "treated for difficulty in maintaining focus, with varying degrees of management with medication for same." [*Id.* (citing [Tr. 311–425])]. Furthermore, Plaintiff asserts that the most recent records indicate that—despite her continued use of medication—she still struggled with maintaining focus and attention. [*Id.* (citing [Tr. 553–606])]. Plaintiff also

6

points to the post-examination opinion of Kevin Blanton, Ph.D. ("Dr. Blanton"), in which he opined to Plaintiff having severe limitations in her ability to maintain attention and concentration. [*Id.* (citing [Tr. 534–41])]. That considered, Plaintiff argues that the ALJ erred by not including limitations regarding her ability to maintain her attention and concentration into the RFC finding. [*Id.*]

Plaintiff also argues that the ALJ failed by not providing for adequate limitations regarding her ability to adapt to change within the RFC. [*Id.*]. Again, Plaintiff points to Dr. Blanton's opinion in which he opined that Plaintiff is severely limited in her ability to adapt to change within a workplace because of her obsessive-compulsive tendencies. [*Id.* (citing [Tr. 534–41])]. Plaintiff claims that this part of Dr. Blanton's opinion is consistent with Plaintiff's own testimony wherein she stated "she keeps doing things over and over" and she "has to have everything just right." [*Id.* at 7–8 (citing [Tr. 51–52])]. Therefore, Plaintiff asserts that the ALJ's determination that Plaintiff can perform jobs with occasional changes is not supported by the record as a whole.

Lastly, Plaintiff contends that the ALJ's alleged failure to adopt findings based on the totality of Plaintiff's impairments is not harmless. Plaintiff argues this is because the VE testified at the hearing that if an individual with Plaintiff's limitations were unable to focus beyond a two-hour period within the eight-hour workday such an individual would be unemployable. [*Id.* at 8 (citing [Tr. 59])]. As such, Plaintiff states that "[h]ad the limitations supported by Plaintiff's treatment notes, the opinion evidence, and Plaintiff's testimony been adopted by the ALJ, Plaintiff would have been considered 'unemployable' as verified by the testimony given by the vocational expert herein." [*Id.*].

The Commissioner argues that the ALJ appropriately explained her reasoning for discounting Dr. Blanton's opinion and that the ALJ sufficiently accounted for Plaintiff's mental

7

impairments in the RFC finding. [Doc. 23 at 8]. For the reasons detailed below, the Court generally agrees with the Commissioner.

In the RFC finding, the ALJ determined that Plaintiff retained the capacity to perform a full range of work at all exertional levels but with non-exertional limitations including that she can perform simple routine, repetitive work with occasional changes in work duties and she can have no customer service interaction with the public but can have frequent interaction with coworkers and supervisors. [Tr. 19]. The Court notes that Plaintiff "bears the burden of producing sufficient evidence to show the existence of a disability." *Lahring v. Comm'r of Soc. Sec.*, No. 19-10324, 2020 WL 1307845, at *2 (E.D. Mich. Mar. 19, 2020) (quoting *Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013)). The Commissioner argues that Plaintiff has failed to meet her burden in this matter, and the Court agrees. Furthermore, substantial evidence supports the ALJ's final RFC finding.

Plaintiff fails to direct the Court to any specific part of the evidence of record that went unaddressed by the ALJ. Further, it is apparent from Plaintiff's argument that she simply disagreed with the ALJ's interpretation and evaluation of the evidence that led to the RFC finding. The Court notes that even when a plaintiff would interpret the medical evidence differently—as Plaintiff does here—, the Court will find no error if it finds that the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a

8

different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Given the substantial evidence in the record, the Court finds that the ALJ was within her "zone of choice" in this case.

The Court finds that the ALJ properly considered the relevant medical and nonmedical factors pertaining to Plaintiff's claimed limitations. For example, when assessing Plaintiff's ability to sustain attention and concentration, the ALJ expressly considered that Plaintiff suffered from ADHD, but it was evident that she did well while on a stimulant, Vyvanse. [Tr. 20 (citing [Tr. 555])]. The ALJ noted that Plaintiff requested to taper off her medication in July 2018 after losing her job and in anticipation of also losing her medical insurance. [Tr. 20, 523]. However, in August 2019, Plaintiff reported that she felt "a lot better" after restarting her medication. [Tr. 21, 595]. Furthermore, the ALJ noted an "office visit note from Peninsula states that the claimant has 'no difficulties' in attention, even at a time when she was not on stimulants." [Tr. 21 (citing [Tr. 563])]. Therefore, the Court finds that the ALJ appropriately considered Plaintiff's improvements to her attention and concentration due to her medication. "Evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits." *Smith v. Comm'r of Soc. Sec.*, 564 Fed. App'x 758, 763 (6th Cir. 2014) (citing *Hardaway v. Secretary*, 823 F.2d 922, 927 (6th Cir. 1987)); *see* 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms . . . .").

When considering Plaintiff's allegations of disabling concentration and memory problems, the ALJ found that the objective medical findings were not consistent with her allegations. *See* [Tr. 21]. The Commissioner points to various parts of the ALJ's decision which the Court finds

9

instructive. *See* [Doc. 23 at 10–11]. For example, Plaintiff had "[n]o difficulties" with attention in May 2019, almost one year after the alleged disability onset date [Tr. 21, 563]; Plaintiff occasionally suffered from attention or concentration deficits, but mental status examinations frequently showed that she had normal though processes, attention, and memory [Tr. 21, 382–83, 398, 403, 557, 596]. Additionally, Plaintiff claimed to have adaptability issues, but the ALJ considered that examinations showed that she exhibited fair to good judgment and insight. [Tr. 21, 383, 398, 40, 522, 577, 596]. That said, the Court finds that the ALJ also appropriately considered the objective medical evidence. 20 C.F.R. § 404. 1529(c)(1) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms . . . may have on your ability to work.").

The Court also finds that the ALJ properly considered Plaintiff's daily activities [Tr. 21]. The ALJ states:

> [Plaintiff] indicated in her Function Report that she can clean and organize her house, care for her 6-year-old granddaughter one to two time per week, care for pets, do laundry, prepare meals (including 'simple casseroles'), drive a car, shop in stores, pay bills, count change, handle a savings account, and use a checkbook/money orders (Ex. 9E/7-9)—all of which supports that she can understand, remember, and carry out at least simple, repetitive tasks.

[Tr. 21]. A plaintiff's reported activities are an appropriate factor for the ALJ to consider when evaluating the severity of allegations of disabling limitations. *See* 20 C.F.R. § 404. 1529(c)(3)(i) (listing a claimant's "daily activities" as a factor for consideration); *see also O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 417 (6th Cir. 2020) ("We have long held that '[a]s a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.") (quoting *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (per

curiam)); *Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 379 (6th Cir. 2017) ("The ALJ reasonably noted that despite her symptoms, [Plaintiff] remains able to perform routine, daily tasks that he viewed as inconsistent with her allegations that her pain and symptoms were completely debilitating.").

The Court also finds that the ALJ appropriately evaluated Dr. Blanton's consultative opinion. The ALJ found that Dr. Blanton's opinion was

> persuasive to the extent it supports that the claimant is *moderately* limited in her ability to understand and remember instructions, and *moderately* limited in her ability to interact with the general public (Ex. 7F/7). However, to the extent it suggests that the claimant is up to 'severely' (*i.e.*, markedly) limited in her ability to sustain attention and concentration, and in her ability to adapt to changes in routine or work-like settings, it is not persuasive . . . .

[Tr. 20] (emphasis in original).

Since Plaintiff's claim was filed after March 27, 2017, the SSA's new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not

11

limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;
>
> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;
>
> **(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021).

The ALJ cited many reasons for to support how she weighed Dr. Blanton's opinion. For example, the ALJ considered that Dr. Blanton's mental examination revealed that Plaintiff demonstrated good judgment and that she could provide appropriate solutions to two simple social situations, leading the ALJ to conclude that Plaintiff could perform simple and repetitive tasks. [Tr. 21, 537]. In evaluating Dr. Blanton's opinion, the ALJ also considered the opinions of state agency psychological consultants P. Jeffrey Wright, Ph.D, and Annette Brooks-Warren, M.D. [Tr. 21]. The ALJ found the opinions of Drs. Wright and Brooks-Warren to be persuasive to the extent that they supported no more than moderate mental limitations for Plaintiff. [*Id.*]. The ALJ found those opinions to be consistent with the record as whole, including with Plaintiff's own reported daily activities and with the numerous office visit notes and mental status exams. [*Id.*]. It is clear from the decision that the ALJ found that Dr. Blanton's opinion was unpersuasive to the extent that he opined to Plaintiff having severe limitations based on her mental health conditions because his opinion was inconsistent with and unsupported by the other evidence of record—including Plaintiff's daily activities, the other opinions of record, the objective medical evidence, and to Dr. Blanton's own examination findings. *See* [Tr. 20–21]. Therefore, the Court finds that the ALJ's evaluation of Dr. Blanton's opinion was proper.

Given the above, the Court finds that substantial evidence supports the ALJ's ultimate RFC finding. Therefore, the Court finds Plaintiff's argument on appeal to be without merit, and remand is unwarranted in this matter.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 20**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge